FILED

February 3, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

TIME 8:11 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| Deatrice Craddock,<br>            Employee, | ) Docket No.: 2015-01-0177 |
| v. | ) State File No.: 41938-2015 |
| Dialysis Clinic, Inc.,<br>            Employer, | ) Judge Thomas Wyatt |
| And | ) |
| The Hartford Insurance Company,<br>            Insurance Carrier. | ) |

---

## EXPEDITED HEARING ORDER DENYING MEDICAL AND TEMPORARY DISABILITY BENEFITS

---

THIS CAUSE came before the undersigned Workers' Compensation Judge on January 6, 2016, upon the Request for Expedited Hearing (REH) filed by the employee, Deatrice L. Craddock, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Ms. Craddock seeks medical and temporary disability benefits from Dialysis Clinic, Inc. (DCI), the employer, arising from an alleged work injury to her left arm and shoulder occurring May 8, 2015. (T.R. 1 at 1; 2 at 1.)

The central legal issue is whether Ms. Craddock came forward with sufficient medical expert opinion to establish that her alleged injury arose primarily out of and in the course and scope of employment. For the reasons set forth below, the Court finds Ms. Craddock is not entitled to the requested medical and temporary disability benefits.

### History of Claim

Ms. Craddock is a sixty-one-year-old resident of Chattanooga, Hamilton County, Tennessee. (T.R. 1 at 1.) At the time of the alleged injury, Ms. Craddock had worked nineteen years as a receptionist and lab technician at DCI.

1

Ms. Craddock worked with Karen Burgess, an administrative assistant at DCI, for approximately four years prior to May 8, 2015, the alleged date of injury. Ms. Craddock claimed she had a problem with Ms. Burgess getting "in her space," including by touching her hair and earrings, shortly after Ms. Burgess began working at DCI. Ms. Craddock testified she told Ms. Burgess not to touch her and reported the problem to higher management. Ms. Burgess testified she never touched Ms. Craddock's earrings and did not touch her hair after Ms. Craddock requested that she not do so. Ms. Burgess testified Ms. Craddock hugged her several times over the years of their co-employment at DCI.

Ms. Craddock testified that, shortly before the date of the alleged injury, DCI management told her not to talk to her co-workers during working hours about non-work matters. Ms. Craddock considered the admonition applied to personal conversations with Ms. Burgess as well and, in compliance, did not speak to Ms. Burgess except about work matters.

Ms. Burgess stated that, around the end of April 2015, she noticed Ms. Craddock would not talk to her. (Ex. 4 at 1.) She felt Ms. Craddock was upset with her and brought this fact to the attention of management at DCI. *Id.* Ms. Craddock's managers told her to have a conversation with Ms. Craddock about this issue. *Id.*

Ms. Craddock came to work at 7:30 a.m. on May 8, 2015. At 7:35 a.m., Ms. Burgess asked her to step into the lab area. (Ex. 4 at 1.) Ms. Craddock accompanied Ms. Burgess into the lab, where they stood face-to-face. *Id.* Ms. Craddock stood with her arms crossed. Ms. Burgess asked Ms. Craddock why she was not communicating with her. Ms. Craddock testified Ms. Burgess also told her that she had helped her at work and recommended her for advancement, at which point Ms. Craddock said she stopped listening and looked away from Ms. Burgess.

Ms. Craddock's and Ms. Burgess's testimony differed on what happened next. Ms. Craddock stated Ms. Burgess used her right hand to grab Ms. Craddock's left arm while it was crossed. She testified that this action startled her. Ms. Craddock stated she told Ms. Burgess to "get your hands off me," and that Ms. Burgess complied. Ms. Burgess testified she touched Ms. Craddock's right arm with her left hand and immediately withdrew the touch when Ms. Craddock asked. (Ex. 4 at 2.)

Ms. Craddock testified she noticed pain in her left arm as she performed keyboard activities on her job following the above-described incident. She stated the pain increased over the ensuing weekend and, on Tuesday of the next week, she told her supervisor she needed to see a doctor about her left-arm pain. Ms. Craddock did not testify that she claimed her left-arm pain was work-related during this conversation with the supervisor.

2

Ms. Craddock testified her left-arm pain worsened as she continued working at DCI during the two weeks following the incident with Ms. Burgess. She testified she reported the incident with Ms. Burgess to her supervisor, who transferred her to another DCI facility. Ms. Craddock testified she also spoke to John Wilhoit, DCI's administrator, about the incident and told him her left arm was hurting and she was pampering it. Ms. Craddock testified Mr. Wilhoit said he would get back with her. Ms. Craddock made a police report about the incident with Ms. Burgess.

Ms. Craddock testified she eventually talked to Mr. Wilhoit again and he took the "company side" of the issue. She stated Mr. Wilhoit told her "you will be sorry" about this matter. Ms. Craddock testified she told Mr. Wilhoit, "I'm injured," and Mr. Wilhoit directed her to Occupational Health Services for authorized care. Ms. Craddock testified Mr. Wilhoit later wrote her up and sent her home for three days. She stated he added "cleaning toilets" to her duties after she returned from the three days off.

Mr. Wilhoit's testimony differed regarding his conversations with Ms. Craddock. Mr. Wilhoit stated Ms. Craddock reported to him that Ms. Burgess, "got in her space and laid hands on her." He asked Ms. Craddock to demonstrate what Ms. Burgess did and described that Ms. Craddock gently shook his arm. Mr. Wilhoit testified Ms. Craddock did not report a physical injury during this first conversation with him and he did not observe that she appeared injured during the conversation. He testified Ms. Craddock first told him on May 21, 2015, that she claimed Ms. Burgess injured her arm. Mr. Wilhoit testified that he thought DCI offered Ms. Craddock a panel after the May 21, 2015 conversation.

Ms. Craddock first sought treatment for her alleged work-related left-arm injury on the Tuesday following the alleged date of injury. She saw a nurse practitioner in her primary care physician's office. The nurse practitioner referred her to Dr. William Matthews, an orthopedic surgeon who had previously performed surgery on her left shoulder. (Ex. 2 at 1.) Ms. Craddock saw Dr. Matthews on May 29, 2015. *Id.* Ms. Craddock did not ask DCI to pay for the above treatment under workers' compensation.

Dr. Matthews noted a history that she "had someone torque her arm recently at work." (Ex. 2 at 1.) On examination, Dr. Matthews noted pain in the left shoulder on external rotation which caused slight limitation of motion. *Id.* Dr. Matthews also noted, "left arm hypersensitivity" possibly indicating mild reflex sympathetic dystrophy. *Id.* Dr. Matthews recommended physical therapy. *Id.*

Ms. Craddock first's authorized treatment for her alleged work injury occurred at Occupational Health Services on June 2, 2015 (Ex. 3 at 1.) The provider who saw Ms. Craddock opined that Dr. Matthews should take over her care. *Id.* Ms. Craddock returned to Occupational Health Services on June 5, 2015. *Id.* at 3. The provider who

3

saw her on that date diagnosed a left-shoulder strain, ordered physical therapy, and imposed work restrictions. *Id.*

Ms. Craddock testified that her pain became worse over the following weeks as she continued working. She stated DCI's carrier denied her claim and, accordingly, she only received four physical therapy sessions because she did not have funds to pay for the recommended therapy. She stated the lack of medical treatment extended the time necessary for her to recover from her injury.

Ms. Craddock testified she missed approximately two weeks from work because of her injury, but could not identify the dates she missed. She testified she lost her job at DCI because she did not come to work and DCI considered that she quit.

### Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[1] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

Tennessee Code Annotated section 50-6-102(14) (2015) defines what constitutes a compensable "injury" on or after July 1, 2014. Only "accidental" injuries, *i.e.,* those injuries "caused by a specific incident or set of incidents arising primarily out of and in the course and scope of employment, and . . . identifiable by time and place of occurrence," entitle an employee to workers' compensation benefits. Tenn. Code Ann. § 50-6-102(14)(A) (2015). Subsections (B) and (C) of section 50-6-102(14) (2015) refine the definition of a compensable injury by requiring that the alleged work injury and any

---

[1] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

4

disablement or treatment arising in connection therewith "[arose] primarily out of and in the course and scope of employment." These subsections further refine the definition by providing that the employee must prove his or her alleged injury arose primarily out of and in the course and scope of employment by evidence that the "employment contributed more than fifty percent (50%) in causing the [alleged injury], considering all causes." Tennessee Code Annotated section 50-6-102(14)(A) (2015) states that the "arising primarily out of" requirement "be shown to a reasonable degree of medical certainty."

At the Expedited Hearing stage of this claim, the above-described statutory mandates require the injured employee to demonstrate that, at a hearing on the merits, he or she will prevail in establishing the alleged injury arose primarily out of and in the course and scope of employment. *McCall v. Advantage Human Resources, supra.* That burden specifically requires that the employee establish causation by expert medical opinion. *See* Tenn. Code Ann. § 50-6-102(14) (2015); *see also Scott, supra,* at *6; *Bradshaw v. Jewell Mechanical, LLC*, No. 2014-06-0056, 2015 TN Wrk. Comp. App. Bd. LEXIS 16, at *19 (Tenn. Workers' Comp. App. Bd. June 4, 2015).

Ms. Craddock did not come forward with any medical expert opinion expressly relating her alleged left arm injury to the May 8, 2015, incident involving Ms. Burgess. The records documenting Ms. Craddock's treatment by Dr. Matthews on May 29, 2015, reference a history that someone torqued her arm at work. (Ex. 2 at 1.) Those records, however, do not contain Dr. Matthews' opinion on what caused Ms. Craddock's injury. *Id.* The forms from Occupational Health Services contain a section where the provider can designate an injury as "Work-Related," "Non-Work-Related," or "Non-Determined." (Ex. 3 at 1, 3.) Neither of the forms Ms. Craddock introduced indicated a response to the causation inquiry. *Id.*

In view of Ms. Craddock's failure to come forward with medical expert opinion establishing that she sustained an injury arising out of and in the course and scope of employment, the Court finds she is not likely to prevail at a hearing on the merits in establishing her claim for temporary disability and medical benefits. Accordingly, the Court denies the relief she requests in her REH at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1.  Ms. Craddock's request for medical and temporary disability benefits is denied.

2.  This matter is set for a Status Conference on **March 15, 2016, at 9:00 a.m. Eastern Time.**

**ENTERED this the 3rd day of February, 2016.**

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

Status Hearing:

A Status Hearing has been set with **Judge Thomas Wyatt, Court of Workers' Compensation Claims.  You must call 855-747-1721, toll-free, or at 615-741-3061 to participate.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u>  Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board.  To file a Notice of Appeal, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2.  File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3.  Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

The Court reviewed the following documents and designates these documents as the Technical Record:[2]

1. Petition for Benefit Determination (PBD), filed July 8, 2015;
2. Dispute Certification Notice (DCN), filed September 1, 2015;
3. Request for Expedited Hearing (REH), filed November 2, 2015;
4. Affidavit of Deatrice Craddock in support of REH, filed November 12, 2015;
5. Employer's Response to Employee's PBD, filed November 20, 2015;
6. Employer's Motion for Enlargement of Time, filed November 20, 2015;
7. Order deciding Employer's hearsay objections, filed December 4, 2015; and
8. Order Enlarging Time for Filing Information in Opposition to Request for Expedited Hearing, filed December 4, 2015.

The Court reviewed the following documents in reaching its decision and designates the documents as Exhibits solely for ease of reference by the Court:

1. Affidavit of Deatrice Craddock;
2. Records of Dr. William E. Matthews;
3. Medical records submitted by Ms. Craddock;
4. Affidavit of Karen Burgess;
5. Chain of Custody form (for identification purposes after the Court sustained DCI's hearsay objection on the basis the document is a business record, as opposed to a medical record, and was not authenticated by the affidavit of a custodian of records;
6. Off-work slip; and
7. DCI Complaint and Grievance Form.

---

[2] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Medical and Temporary Disability Benefits was sent to the following recipients by the following methods of service on this the 3rd day of February, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Deatrice Craddock, Self-Represented | | | X | Msdlcraddock@epbfi.com |
| Blair Cannon, Attorney | | | X | Blair.cannon@thehartford.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

9